IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DAVID ALAN MANNING, | ) | CIVIL ACTION NO. 9:13-2183-MGL-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner wherein he was denied disability

benefits. This case was referred to the undersigned for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on May 26, 2010, alleging

disability beginning August 7, 2007 due to middle abdominal, groin, and spine problems. (R.pp. 79-

82). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested

a hearing before an Administrative Law Judge (ALJ), which was held on February 28, 2012. (R.pp.

53-71). The ALJ thereafter denied Plaintiff's claim in a decision issued March 9, 2012. (R.pp. 36-

46). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby

making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in this United States District Court, asserting that there



is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v.



Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was thirty-eight (38) years old when he alleges he became disabled, has a high school education with past relevant work experience as a mail delivery driver and foreman at a golf course. (R.pp. 45, 57-58, 302, 385). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of status post left orchiectomy,[2] status post inguinal hernia with mesh, and lumbar disc disease without stenosis, thereby rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a reduced range of light work[3], and was therefore not entitled to disability benefits. (R.pp. 38, 40, 45-46).

Plaintiff asserts that in reaching this decision, the ALJ grossly overestimated his level of functioning and was "quite selective in choosing those medical records to which significant

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2]The surgical removal of a testicle. Taber's Cyclopedic Medical Dictionary (22nd ed. 2013).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



weight was afforded". Plaintiff also complains that the Appeals Council erred by failing to evaluate new evidence and/or failed to follow the treating physician rule.[4] However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

Plaintiff's medical records reflect (and the ALJ discussed) that Plaintiff suffered an on the job injury on August 17, 2007 (his alleged disability onset date) when he suffered an injury to his groin area. Plaintiff was subsequently seen by Dr. Stephen Sisco for complaints of left groin pain and a possible hernia. On examination Dr. Sisco found that Plaintiff did have a reducible left inguinal hernia, but also noted that he was "otherwise relatively healthy". Surgical repair of the left inguinal hernia was recommended, and Plaintiff underwent hernia repair surgery with mesh on August 24, 2007. (R.pp. 492-493, 502). The ALJ noted in his decision that Plaintiff's hernia repair was successful. (R.p. 41). See (R.p. 505). Plaintiff even returned to work and was doing a little bit of lifting at work, while also otherwise engaging in relatively normal activity. (R.p. 507). Plaintiff returned to see Dr. Sisco on October 10, 2007 complaining of some pain in his testicle and in the left groin area. An examination revealed only minimal tenderness with a well healed incision and no evidence of any hernia or other abnormality, and Dr. Sisco advised Plaintiff to remain on limited

---

[4]Plaintiff's complaint regarding the treating physician rule is actually more appropriately addressed through review of the ALJ's decision, which is how it has been considered in this opinion.



activity but not do any "heavy" lifting.  (R.p. 507).

When Plaintiff continued to have complaints of pain, Dr. Sisco referred him to Dr. John Adams (a urologist) for an evaluation.  (R.p. 509).  Plaintiff was kept out of work for the interim.  (R.p. 511).  Plaintiff saw Dr. Adams on October 23, 2007, for complaints of pain and tenderness in his left testicular area and scrotum.  On examination Plaintiff had no abnormalities in either inguinal area, while Plaintiff's scrotum and both testicles appeared to be normal.  Dr. Adams also examined Plaintiff's back, which was found to be within normal limits, and it was noted that Plaintiff had a normal gait and station with full range of motion and normal muscle strength.  Plaintiff also had no mood problems, and did not appear to be depressed.  (R.pp. 534-535).  Plaintiff was prescribed Lortab for his complaints of pain.  (R.p. 536).  The ALJ noted in his decision that Plaintiff's urology treatments thereafter continued to indicate overall normal examinations, with testicular pain being the only symptoms reported.  (R.pp. 41, 537-549).

Plaintiff also continued to be seen by Dr. Sisco during this period of time, where his complaint continued to be groin pain.  Even though Dr. Adams' records reflect that Plaintiff was experiencing no erectile dysfunction, he told Dr. Sisco that he was not able to have sex.  Plaintiff also complained to Dr. Sisco of nausea, which had caused him to throw up "a few times" over a period of weeks.  Although Dr. Sisco opined that Plaintiff was unable to return to his job during this period,[5] his examinations generally reflected that, while Plaintiff continued to complain of left

---

[5]Plaintiff's past work was classified as "medium" work; (R.p. 67); which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).  Consistent with Dr. Sisco's opinion, the ALJ did not find that Plaintiff was able to perform his past medium work.  (R.p. 45).  That does not, however, mean that Plaintiff was or is totally disabled or entitled to disability benefits.  Ehrisman v. Astrue, 377 Fed. Appx. 917, 918-919 (11th Cir. 2010).



testicle tenderness, his inguinal incision was well healed, there was no obvious hernia, and there were no other significant findings on examination. Plaintiff was treated with prescriptions and occasional injections. See generally, (R.pp. 512-514, 516-520).

Dr. Sisco also referred Plaintiff to Dr. Karen Eller (a pain management physician), asking her to see if some nerve block would help the Plaintiff. (R.p. 515). Plaintiff saw Dr. Eller on January 15, 2008 for his complaints of left testicular pain and nausea. Plaintiff also complained of depression because of pain and the fact that he was going through a divorce. Percocet was listed as an "improving factor". Dr. Eller performed musculoskeletal and neurological examinations, which were essentially normal, and Plaintiff also had a normal gait and normal strength with no lumbar tenderness. Dr. Eller did find that Plaintiff had hyperesthesia[6] in his left testicle, and he was provided with an injection for pain. Dr. Eller said that if that worked, they would repeat that procedure maybe one or two weeks for three or four injections, otherwise Plaintiff could start on Lyrica. (R.pp. 411-413). Similar findings were noted on a visit by Plaintiff to Dr. Eller on March 13, 2008. (R.pp. 420-421).

In addition to Dr. Eller, Plaintiff was also seen by Dr. Ian Marshall on January 21, 2008, where he was assessed with a pleasant mood and affect. Dr. Marshall's records reflect that Plaintiff had an essentially normal examination. Specifically, with respect to Plaintiff's genitourinary exam, Plaintiff's right scrotal contents were found to be completely normal, while his left scrotal contents revealed a "mildly" atrophic left testicle. Plaintiff told Dr. Marshall that the nerve blocks he had been receiving resulted in some improvement in his symptoms, although not a

---

[6]Unusual or pathological sensitivity of the skin or of a particular sense to stimulation. http://www.merriam-webster.com/dictionary/hyperesthesia.



complete resolution, and Dr. Marshall believed the most likely explanation for Plaintiff's chronic left scrotal and testicular pain was a post traumatic neuropathic pain, an opinion apparently shared by Dr. Eller. Medications and nerve blocks were the recommended treatment. Although Dr. Marshall noted that an orchiectomy might be of some benefit, he believed that was "fairly unlikely". (R.pp. 487-488).

In sum, while Plaintiff continued to complain of testicular pain during this period, the medical evidence through early 2008 shows that his inguinal surgery repair was a success, there was no evidence of a hernia or other abnormality, Plaintiff had a normal gait and station with full range of motion and normal muscle strength, musculoskeletal and neurological examinations were essentially normal, and his treatment with medication and nerve blocks for his complaints of testicular pain, although not resulting in complete resolution, did provide some relief. As noted by the ALJ in his decision, these records do not indicate that Plaintiff was totally disabled from all work activity at this time; (R.p. 41); a finding supported by substantial evidence in the case record. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]; Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [condition is not disabling if reasonably controlled by medication or treatment].

When Plaintiff returned to see Dr. Sisco on April 7, 2008 for a follow up he was not having any groin pain but still complained of a lot of testicular pain. Examination at that time



revealed a well healed inguinal incision with no evidence of any tenderness or abnormalities there, but Plaintiff did complain of being "exquisitely tender" along his left testicle, although not the scrotum itself. Dr. Sisco indicated that he would defer to Dr. Adams with respect to the management of Plaintiff's testicular pain. (R.p. 521). When Plaintiff returned to see Dr. Adams for his three month follow up on April 22, 2008, he advised Dr. Adams that his testicular pain was "intermittent but very severe". While review of Plaintiff's systems was positive for abdominal pain, all other systems were negative. Plaintiff was found on examination to be well developed and in no acute distress. Examination of Plaintiff's back was within normal limits, he had a normal gait and station, full range of motion, normal stability, and normal muscle strength and tone. Plaintiff's mood indicated no abnormalities, and he did not appear to be depressed. While Plaintiff complained of pain so severe it would sometimes cause nausea that radiated towards the upper scrotum, Plaintiff had no abnormalities in either inguinal area, nor were any abnormalities noted on the scrotum. A scrotal ultrasound showed that Plaintiff's left testicle was slightly smaller than the right, but under "active problems" Dr. Adams wrote "none". Dr. Adams' notes also reflect that he "explained the finding of the growth[7] and its possible consequences without surgery [an orchiectomy] and with surgery". (R.pp. 550-552).

Plaintiff ultimately decided on surgery, and underwent a left groin exploration, left orchiectomy, and cord block on June 2, 2008. (R.pp. 561-562). Three weeks post surgery, Plaintiff reported to Dr. Eller that the original pain he was having was gone since his surgery, that he had been doing very well, that he was able to decrease and even stop taking his pain medications, and that his

---

[7]Although it is not clear from his report, Dr. Adams is apparently referring to some bilateral small epididymal cysts, which were shown on the scrotal ultrasound. (R.p. 551).



swelling was gone.  However, following this initial period of success, Plaintiff told Dr. Eller that on June 20, 2008, he had "had a sudden onset of pain" accompanied by bruising in the groin area. Plaintiff reported that he was presently taking Percocet, Lyrica, and Flomax; that he was experiencing no nausea, constipation, or grogginess; and had been sleeping well until the episode of June 20th.  On examination Dr. Eller found Plaintiff to have a normal gait with normal strength, tone and sensation; and there was no lumbar tenderness and no obvious muscle spasms.  Although there was also no induration and no sign of infection, she did observe bruising on the underside of the testicular area.  Dr. Eller assessed Plaintiff with abdominal pain in his left lower quadrant, and adjusted his medications.  (R.pp. 426-427).

Plaintiff returned to see Dr. Adams on June 25, 2008 for his post operative review of symptoms.  Dr. Adams noted that there was some swelling and bruising post op after ochiectomy, and while Plaintiff's incision appeared to be closed and healing well, Plaintiff complained of pain in the testicular area on the left of several weeks duration.  Dr. Adams noted on review of systems that Plaintiff had scrotal tenderness, with all other systems being negative.  With respect to the scrotum itself, only "minimal" swelling and tenderness was noted.  Dr. Adams noted that the Plaintiff had not been lifting or doing any "heavy" work, and he encouraged Plaintiff to continue with decreased activity with regard to lifting and straining.  Instead, he suggested Plaintiff increase some of his other activities such as walking and other forms of gentle exercise, and to return if the pain reoccurred or increased.  (R.pp. 567-569).

When Plaintiff went to see Dr. Sisco for a follow up appointment a few days later (July 7, 2008), he reported that he was "doing well at this time".  Plaintiff told Dr. Sysco that he had had "significant improvement in his pain almost immediately", although he was requiring some



Percocet once or twice a day for some discomfort. Plaintiff also told Dr. Sysco that he had a follow up appointment with Dr. Adams in approximately four weeks, at which time he likely would be able to return to work. On examination Dr. Sysco found that Plaintiff had only "minimal" tenderness along his scrotum ("very, very faint"). (R.p. 522). The ALJ noted these general findings in his decision; (R.p. 42); and there does not appear to be any evidence of a totally disabling medical condition in these records.

Plaintiff returned to see Dr. Adams on August 12, 2008 for his six week follow up post operation. Plaintiff still had some swelling in the groin area, and Dr. Adams indicated he would "watch this area closely" while advising Plaintiff to take Keflex three times a day. Plaintiff was experiencing no nausea/vomiting, constipation, diarrhea, or abdominal pain, he was noted to be well developed and well nourished and in no acute distress, while psychologically he was noted to be "[s]atisfied with life, not depressed". Plaintiff was, however, still complaining of pain in the testicular area on the left, which Dr. Adams noted had been better for several weeks but was now continuing to get worse. (R.pp. 577-579). Following that visit, Dr. Adams performed a left scrotal exploration on August 18, 2008, which included removal of a blood clot and fluid, and placement of a drain. (R.pp. 318-319). At his follow up visit on August 21, 2008, Plaintiff advised that his drain had been "draining fairly well", review of systems noted no abnormalities, Plaintiff was not depressed, and Dr. Adams advised Plaintiff to continue increasing his activities such as walking and other forms of gentle exercise. (R.pp. 587-589). Plaintiff's drain was removed the following day. (R.pp. 591-592).

On August 28, 2008, Plaintiff advised Dr. Adams that he was having some swelling after removal of the drain with some discomfort, and also complained that another mass had started



growing. A review of systems was again essentially normal, with no indication of any complaints of nausea or vomiting. Psychologically Plaintiff was again noted to be satisfied with his life and not depressed. Dr. Adams noted that Plaintiff's scrotal mass did not appear to be malignant, but that he would watch this area closely and Plaintiff was advised to contact him immediately if there was any change. (R.pp. 595-597). When Plaintiff returned for a follow up visit on September 4, 2008, he was noted to be well developed, well nourished and in no acute distress; a review of Plaintiff's systems was essentially normal; and he was found to have only "moderate" swelling and tenderness in the left scrotum with his incision closed and healing well. Dr Adams adjusted Plaintiff's medications, and he was advised on when to return. (R.pp. 599-601). On October 3, 2008, Dr. Adams noted that Plaintiff was better with "some swelling" occurring when he was on his feet, otherwise he had improved slowly over the past three weeks. Dr. Adams advised Plaintiff to continue with decreased activity with regard to lifting and straining, while increasing other activities such as walking and other forms of gentle exercise. Plaintiff was admonished to watch any scrotal swelling closely and to contact Dr. Adams immediately if there was any change. (R.pp. 603-606). Review of Plaintiff's systems on that date was essentially normal, and again there is nothing to indicate that Plaintiff was totally disabled from all work activity in these records.

On November 11, 2008 Plaintiff went back to see Dr. Eller to reestablish himself as a patient. Plaintiff complained to Dr. Eller of sharp, throbbing pain in the right testicle and left groin areas. Plaintiff denied any grogginess from medications, but told Dr. Eller (contrary to what he apparently was telling Dr. Adams) that his pain did cause nausea. Other than swelling in the suprapubic area, Plaintiff's examination findings were essentially normal, including normal gait and strength with no lumbar tenderness. Significantly, Dr. Eller noted that Plaintiff had been out of work



for a long time, and that they had discussed trying to find Plaintiff a sedentary job so that he could transition back into the workplace. (R.pp. 430-431). Dr. Eller continued to provide Plaintiff with medications, including Avinza (a form of morphine); (R.pp. 432-433); and when Dr. Eller saw Plaintiff again on December 6, 2008, he advised he had no nausea. Otherwise his condition was unchanged. (R.p. 436).

The ALJ noted in his decision that these treatment records indicated that Plaintiff was improving slowly with better symptoms, and that by December 2008, from a genitorial standpoint, he had achieved maximum surgical outcome and benefit with his post surgical results being excellent. (R.p. 42). Substantial evidence in the case record supports this finding. Not only did Dr. Eller indicate that Plaintiff could perform at least sedentary work, but Dr. Adams' treatment notes through the end of December 2008 indicate that Plaintiff had achieved maximum surgical outcome and benefit, with Dr. Adams opining that Plaintiff's post surgical results were "excellent and he should be able to return to work without limitation". (R.pp. 607-613). Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]; Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

Plaintiff apparently did not return to see Dr. Adams again until January 8, 2010, over a year later. (R.p. 615). In the intervening year, Plaintiff continued to be followed by Dr. Sisco and Dr. Eller. Dr. Sysco noted on January 19, 2009 that he observed no hematoma or other abnormality, that Plaintiff had been released by Dr. Adams, that Dr. Eller was giving him some injections in his back, and that Plaintiff "finally has some very good relief". (R.p. 523). On April 6, 2009, Dr. Eller reported that Plaintiff had received "23 days of complete relief from his last injection". While Plaintiff told Dr. Eller that his pain had then returned when he "bent over in Walmart", at that point



he thought "his pain [was] slightly better overall though he does not think he can go without pain meds". On a review of Plaintiff's systems he had no reports of nausea or grogginess, he had a normal neurological exam, and he had no lumbar problems. Dr. Eller assessed Plaintiff with left lower quadrant abdominal pain, and the possibility of Plaintiff having a Spinal Cord Stimulator (SCS) implanted was discussed. (R.pp. 451-452). The ALJ cited to these medical records as indicating that Plaintiff's back pain disorder was mild and not as limiting as the Plaintiff alleged, while overall his pain was better including periods of complete relief. (R.p. 42).

Prior to implementation of the Spinal Cord Stimulator, Plaintiff had a psychological evaluation conducted by Jana Sanders, a licensed counselor. Dr. Sanders concluded that Plaintiff did not meet the criteria for any mental disorder or substance abuse; (R.pp. 400-402); and Plaintiff thereafter had a trial SCS implantation on May 11, 2009. Following this procedure, Plaintiff told Dr. Eller that his pain was "very mild" and that he "felt much better with the stimulator". (R.pp. 458-459, 666). Plaintiff was then referred for permanent implantation, which was performed by Dr. Mark Netherton on August 4, 2009. (R.pp. 371-373). By August 20, 2009, Plaintiff advised Dr. Eller that he was pleased with the pain relief he was receiving from the SCS, with a fifty percent overall reduction in pain. Dr. Eller discussed weaning Plaintiff off of his meds, and a possible return to sedentary type work within three months. (R.pp. 673-674). The ALJ noted in his decision that Dr. Eller's treatment records documented that by August 24, 2009, Plaintiff was only having to use his SCS intermittently, for a few hours every two to three days. (R.p. 42). Dr. Eller also noted that Plaintiff's case worker indicated there was a desk job available for him, but that Plaintiff "was now stating that he cannot do that while on pain meds per UPS protocol". However, Dr. Eller opined that Plaintiff was "fine to do desk work regardless of being on med". (R.p. 675).



On September 17, 2009, Plaintiff initially told Dr. Eller that he was having to "us[e] his SCS regularly". He now also complained of having pain in his right testicle, and again told Dr. Eller that he could not go back to work until he was off of opioids. Examination of that date found that Plaintiff had no nausea and no grogginess; neurologically he had a normal gait with normal muscle strength, tone and sensation; and no lumbar tenderness. Surprisingly, even though Plaintiff's primary complaint was that he had pain in his upper left middle scrotum, Dr. Eller noted that his genitalia was "not examined". Dr. Eller's notes further indicate that she had a "long talk" with the Plaintiff, and that she determined that he had actually been using his SCS only "a few days", and mostly at night, not "regularly" as he had initially claimed. There had even been an entire week when he had hardly turned it on. Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]. Dr. Eller stated that she was "very forthright with [Plaintiff] and told him that he needed to get on with his life, to accept the fact that he has pain, and to use his SCS". (R.pp. 471-472). See Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

Plaintiff thereafter returned to see Dr. Eller on October 15, 2009. Plaintiff complained of "severe" pain, and it was noted that Plaintiff had been weaned from Avinza, with Plaintiff stating that this had increased his pain. Plaintiff told Dr. Eller that he had hoped that he could return to his former employment, but that he was not sure how he could work with his sporadic, unpredictable and debilitating pain. However, Plaintiff indicated that he had experienced no nausea or grogginess, and he again had an essentially normal general examination. At this point Dr. Eller opined that Plaintiff was at maximum medical improvement, that she did not think that they would be able to completely wean Plaintiff from opioids, and that she did not think that he would

14



be able to "return to full time employment at UPS".[8]  She opined that Plaintiff would need ongoing treatment in a pain center every one to three months, and recommended that he return to see Jana Sanders for additional counseling.  (R.pp. 473-474).

Plaintiff began counseling again with Ms. Sanders in November 2009, and she indicated that, in her opinion, his prognosis was poor.  (R.pp. 405-406, 409-410).  Plaintiff also saw Dr. Sysco again on November 18, 2009 for a follow up evaluation.  Dr. Sysco noted that Dr. Eller was managing Plaintiff's chronic pain syndrome with methadone and a nerve simulator, and that Plaintiff complained his medications were causing him to be constipated.  Plaintiff told Dr. Sysco that Dr. Eller said he would not be able to "return to work" because he required chronic pain management.  On examination Plaintiff exhibited tenderness along his left inguinal incision, but there was no evidence of any hernia.  Dr. Sysco opined that Plaintiff appeared to be stable and managed with chronic therapy per Dr. Eller.  (R.p. 526).

When Plaintiff saw Dr. Eller again on December 9, 2009, he complained of low back discomfort when he walked.  However, he said his SCS was still helping and that he did not even use it at night.  Plaintiff's general examination results were essentially normal, with again his genitalia not even being examined.  (R.p. 483).  On December 30, 2009, Dr. Eller wrote a "To Whom It May Concern" letter recommending that Plaintiff have a colonoscopy.  (R.p. 485).

Plaintiff had a vocational evaluation performed on October 16, 2009 by Dr. Robert Brabham.  Although none of Plaintiff's physical examination reports had ever indicated any significant lumbar or muscle problems, Dr. Brabham noted that Plaintiff presented using a cane.  He also "wriggled and changed positions throughout the evaluation and kept a trash can beside him",

---

[8]Plaintiff's past "medium" work level job.  (R.p. 67).  See also, n. 5, supra.

15



advising that he might need to vomit due to experiencing nausea.  It was noted that Plaintiff was receiving workers compensation.  Plaintiff told Dr. Brabham that he regularly experienced extreme pain for hours at a time, that he was unable to sustain much activity, and that he spent most of his time reclining.  Dr. Brabham went through Plaintiff's medical records, and stated that in reaching a vocational opinion due consideration had to be afforded to the fact that Plaintiff's pain required that he spend nearly his entire day resting or reclining, as well as to the anxiety and depression he experienced.  Dr. Brabham concluded that Plaintiff's limitations with sitting or standing or nearly any movement or activity was vocationally such that even any sedentary work which might otherwise have been suggested was precluded, and that Plaintiff was unable to perform any substantial gainful work activity.  (R.pp. 165-177).

Plaintiff returned to see Dr. Adams on January 8, 2010.  Dr. Adams noted his previous report finding that Plaintiff's post surgical results were excellent and that he should be able to return to work without limitation, with future treatment to be provided by Dr. Eller.  Review of Plaintiff's systems was all essentially normal, with Plaintiff also being noted as being "not depressed".  Plaintiff's right testicle was normal to palpation with no masses or tenderness noted, but Plaintiff told Dr. Adams that he was still having pain in his groin when he "moves a certain way", complained of some "post void spurts" and that he did not feel as though he emptied his bladder, and that he had pain in his groin when he had sexual relations and physical contact.  (R.pp. 615-616).  Plaintiff then returned to see Dr. Eller on February 8, 2010, advised her that he had incontinence that had begun about three months previous, and that his back had started to hurt at that time as well.  Plaintiff had no complaints of nausea or grogginess, however, and on examination he was found to have a normal gait; normal strength, tone and sensation; with no lumbar tenderness. Plaintiff also reported that he was no longer using his SCS at night because it interfered with his



sleep, resulting in severe pain in his back when he woke up.  No changes were made to Plaintiff's medications.  (R.pp. 689-690).

Because of Plaintiff's complaints of increased lower back pain, he underwent a thoracic spine CT and lumbar spine CT on March 2, 2010.  The thoracic spine CT revealed no evidence of significant disc protrusion with only mild anterior osteophytes at T7-T10, and was otherwise normal.  (R.p. 820).  His lumbar spine CT was also essentially normal, revealing only mild disc protrusions at L3-4 and L4-5.  (R.pp. 822-823).  The ALJ noted these essentially normal test results in his decision.  (R.P. 43).

On March 5, 2010 Plaintiff returned to see Dr. Adams regarding his voiding problems, complaining that since the placement of his stimulator he had some leakage after urination.  Plaintiff also complained that he experienced "stabbing pain in the scrotum with nausea" upon "physical contact".  Review of systems was negative, and Plaintiff was advised to follow up with urodynamics.  (R.pp. 866-868).  On March 25, 2010, Plaintiff was seen by Dr. Lewis Plzak (who apparently is with the same practice as Dr. Adams) for complaints of a painful testicle and leakage after urination following implantation of the stimulator.  Urodynamics was again recommended.  (R.pp. 863-865).  Plaintiff followed up with Dr. Adams on June 10, 2010, again complaining of voiding dysfunction, some incontinence, as well as pain in the groin with foreplay.  However, upon examination Plaintiff's bladder appeared to be empty, with no masses and no tenderness present, his right testicle was normal to palpation, and there were no other abnormalities noted.  Plaintiff was told to return in six months.  (R.pp. 875-878).

On July 8, 2010, Plaintiff's constipation was noted to be "much better", with Dr. Eller opining that Plaintiff "seems to be doing pretty well and feels that he is in a good place and that his pain is manageable with its present regimen".  A general examination performed by Dr. Eller was



essentially normal. (R.p. 922). When Plaintiff returned for an SCS reprogram on July 12, 2010, Dr. Eller noted that Plaintiff was "very happy when he left, had back coverage as well". (R.p. 924). On August 20, 2010, Plaintiff underwent a lumbar myleogram, which was normal, while a CT scan of Plaintiff's lumbar spine performed that same date showed a shallow extradural defect continuous with the L4-5 disc without severe spinal stenosis or neuroforaminal stenosis. This imaging also found a normal appearance of the lower thoracic spine and thoracolumbar junction spinal cord. It was noted that the "etiology of [Plaintiff's] bowel and bladder dysfunction [was] not [able to be] ascertained on the basis of this examination". (R.pp. 890, 892).

On February 15, 2011, Plaintiff told Dr. Eller that he had been more active, playing more with his grand kids, that he was using his SCS regularly, and had had only one episode of incontinence. Nonetheless, Plaintiff complained of "continuous" left lower back and scrotum pain, even though on examination he was found to have a normal gait, normal strength, tone and sensation, with no lumbar tenderness. Again, Plaintiff's genitalia were not even examined. He told Dr. Eller that he was not sure that his methadone was helping as much anymore, so his dosage was increased. (R.p. 946).

Plaintiff went back to see Dr. Sysco on May 16, 2011 for a follow up evaluation, at which time he complained of a real sharp pain in his lower back "at times", as well as left testicular phantom pain. Plaintiff was told to return in four weeks. (R.p. 973). On August 18, 2011, Plaintiff returned to see Dr. Eller for a previously scheduled injection, at which time he told Dr. Eller that he had had "a miserable month". General examination findings, however, were again normal. Plaintiff's medications were continued with potential alternatives to treatment, such as radio frequency ablation, being discussed. Plaintiff had an injection, and was experiencing a forty percent decrease in pain at the time of discharge. (R.pp. 997-998).



On January 18, 2012, Dr. Eller completed a Multiple Impairment Questionnaire in which she opined that Plaintiff was "permanently disabled" due to "severe intractable pain". While noting the relatively mild imaging findings, Dr. Eller stated that there was "no objective test for [illegible] pain". Dr. Eller opined that Plaintiff experienced pain at a level of nine on a ten point scale, as well as fatigue at a level of nine on a ten point scale. She also opined that Plaintiff had unacceptable side effects from medication. She believed Plaintiff could sit and stand/walk for less than one hour in an eight hour work day, that Plaintiff could frequently lift or carry only ten pounds or less, that Plaintiff's symptoms would likely increase if placed in a competitive work environment, that Plaintiff's pain, fatigue and other symptoms would constantly interfere with his attention and concentration, and that Plaintiff's impairments would likely require him to be absent from work two to three times per month. See generally, (R.pp. 984-989).

On May 22, 2012, Jana Sanders (who had continued counseling Plaintiff during the relevant time period), wrote a "To Whom It May Concern letter" stating that Plaintiff suffers from extreme depression and anxiety, and that due to the severity of his symptoms he was unable to work. She also opined that Plaintiff had a GAF at that time of 39.[9] (R.p. 29). Sanders also submitted another statement in which she opined that Plaintiff's depressive symptoms seemed to have increased over the past year, and that he would benefit from continued counseling as he had reported thoughts of ending his life. (R.p. 1015).

---

[9]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 31-40 indicates 'some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.'" Kirves v. Callahan, No. 96-5179, 1997 WL 210813 at **2 (6th Cir. Apr. 25, 1997).



## II.

After review of the evidence and consideration of the subjective testimony, the ALJ found that Plaintiff could perform light work with the ability to stand, walk and sit for six hours each in an eight hour workday, perform "occasional" postural activities, should be given an opportunity to sit or stand during the work process, and could perform simple routine repetitive tasks. (R.p. 40). In reaching this decision, the ALJ not only cited the medical records discussed hereinabove, supra, but also accorded significant weight to the opinions of the state agency physicians, which he found to be consistent with the overall evidence of record. (R.p. 44). Specifically, on October 28, 2010, state agency physician Dr. Cleve Hutson opined that Plaintiff could perform light work with the same standing/walking/sitting requirements noted by the ALJ in his decision, with no other limitations. Dr. Hutson reviewed Plaintiff's medical records and findings and concluded that while Plaintiff's allegations of groin and abdominal pain was credible based on the longitudinal record, he was reasonably capable of sustaining a level of light exertion with the RFC noted, taking into account his pain. (R.pp. 929-936). On March 23, 2011, Dr. William Cain completed a Residual Functional Capacity Assessment wherein he came to the same conclusions as had Dr. Hutson. (R.pp. 962-969).

The ALJ could properly rely on these physician opinions in reaching his findings and decision. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]. Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt by assigning him additional postural limitations that the state agency physicians did not even find he had. Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept.



21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

The ALJ also noted that in a function report submitted by the Plaintiff as part of his application, that, notwithstanding Plaintiff's allegations of disabling pain, he stated he was able to walk, ride in and drive a car; shop; and handle his financial matters.  He was also able to spend time with others on a daily basis, and occasionally go to the mall or restaurants.  (R.pp. 43, 292-293). Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities].

In sum, the ALJ determined that the RFC he assigned was consistent with the medical record as whole; with the opinion of the state agency medical consultants; took into account Plaintiff's prior repaired hernia, prior orchiectomy,  and residual pain by limiting Plaintiff to work at the light exertional level with only occasional postural activities as well as a need to change position; and also took into consideration the fact that Plaintiff requires the use of pain medications by limiting him to simple routine repetitive tasks.  (R.pp. 44-45).  While Plaintiff obviously believes he should have been assigned greater limitations based on his documented history of consistent complaints of pain, it is the job of the ALJ to evaluate the  record and make findings after a review of the evidence, and there is nothing in the record which would warrant this Court overturning the ALJ's decision in this case.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with



the ALJ, not with a reviewing court"]; <u>Lee v. Sullivan</u>, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

## III.

In arguing for a reversal of the decision, Plaintiff does not set forth many specific arguments in his brief for why a reversal is warranted.  Instead, Plaintiff spends almost his entire brief simply reciting his medical records.  <u>See</u> <u>Plaintiff's Brief</u>, pp. 2-16.  However, while these medical records confirm that Plaintiff suffers from the impairments found to be severe impairments by the ALJ in his decision, the fact that Plaintiff suffers from severe impairments does not automatically entitle him to disability benefits.  Rather, Plaintiff must establish that his impairments totally disable him from all work activity.  <u>Blalock</u>, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability]; <u>Plummer v. Astrue</u>, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx.  795 (4th Cir. 2012); <u>see</u> <u>also</u> <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].  For the reasons already discussed, <u>supra</u>, the ALJ acted within his authority in deciding that the evidence did not warrant a finding of disability in this case.  <u>See</u> <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; <u>cf</u>. <u>Hepp</u>, 511 F.3d at 806 [Noting that the substantial evidence standard requires less that even a preponderance of the evidence].

Additionally, to the extent Plaintiff's complaint is that the ALJ did not in his decision



discuss *every* medical record submitted, this is not a requirement.  Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th  Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision].  Rather, what is required is that the ALJ review the medical records and set forth a rationale for his decision that is supported by substantial evidence in the case record.  Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) [". . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"].  An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions.  Fischer v. Barnhart, 129 F. App'x. 297, 303 (7th Cir. 2005) (citing Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004)); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ["ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"] (citations omitted).

That is what the ALJ did in this case, and this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]. This claim is therefore without merit.



## IV.

With respect to Plaintiff's complaint that the ALJ did not accept Dr. Eller's opinion of disability, the ALJ specifically discussed Dr. Eller's records and opinion, but accorded her opinion of disability little weight.  (R.p. 44).  First, he noted that Dr. Eller's opinion that Plaintiff was "permanently disabled" was a determination of disability, a decision that is explicitly reserved to the Commissioner.  See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].  The ALJ also noted that Dr. Eller's opinion that Plaintiff was unable to sit or stand for even one hour in an eight hour day was inconsistent with her own treatment notes, Plaintiff's basically normal physical examinations, and even her own previous statement that Plaintiff could perform sedentary work or a desk type job.  (R.pp. 44, 411-413, 426-427, 430-431, 471-471, 483, 673-675, 922, 924, 946).  See Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].

The ALJ also cited the other contrary medical evidence, including the opinion of treating physician Dr. Adams, as evidence to discount Dr. Eller's opinion of disability.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record].  Again, the undersigned can find no reversible error in the ALJ's treatment of this evidence.  Guthrie



v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL

9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary

conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this

Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are

supported by substantial evidence, they must be affirmed, even in cases where contrary findings of

an ALJ might also be so supported."] (citation omitted)]; see also Smith, 99 F.3d at 638 ["The duty

to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

V.

Finally, Plaintiff's contention that the Appeals Council committed error by failing to

consider the new medical records submitted to that Body is without merit.  The Appeals Council

must consider evidence submitted with a request for review only if the evidence is new, material,

and relates to the period on or before the date of the ALJ's decision.  See Wilkins v. Secretary of

Department of Health & Human Services, 953 F.2d 93, 96 (4th Cir. 1991).  Here, the Appeals

Council properly found that the evidence submitted did not pertain to the period on or before the

ALJ's decision in this case, and therefore did not affect the decision about whether Plaintiff was

disabled beginning on or before March 9, 2012, the date of the ALJ's opinion.  (R.p. 2).

In making this finding, the Appeals Council properly noted that if Plaintiff believes

this evidence establishes his disability, he could file a new claim for disability insurance benefits

using May 9, 2012 as the date of his new claim.  However, the fact that Plaintiff obtained this new

evidence, post-decision, does not warrant reversal of the decision of the ALJ in this case.

**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept

as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.



25

1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e.,

if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this

Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>,

483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the

conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social

Security Act during the relevant time period.  Therefore, it is recommended that the decision of the

Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.


_____
Bristow Marchant
United States Magistrate Judge

November 19, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

